UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICKIE OWENS-BENNIEFIELD,

    Plaintiff,

v.                        Case No.: 8:17-cv-540-T-33TGW

NATIONSTAR MORTGAGE LLC,

    Defendant.

_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Nationstar Mortgage LLC's Amended Motion to Dismiss (Doc. # 23), filed on May 15, 2017. Pro se Plaintiff Vickie Owens-Benniefield filed a response on May 23, 2017. (Doc. # 25). For the reasons that follow, the Motion is granted in part and denied in part.

## I.   Background

In January of 2008, Owens-Benniefield took out a mortgage to purchase a property in Tampa, Florida. (Doc. # 17 at ¶¶ 14-15). Owens-Benniefield struggled to pay the mortgage, so she "completed a deed in lieu of foreclosure in which the debt was forgiven by Federal Home Loan Mortgage Corporation on February 24, 2015." (Id. at ¶ 15). Owens-Benniefield received a letter, which was addressed to the

Comptroller of the Currency and indicated "the Deed in Lieu of Foreclosure was approved by the investor Federal Home Loan Mortgage Corporation." (Id. at ¶ 17). Defendant Nationstar Mortgage LLC "was a party to the transaction for the Deed in Lieu as they had to execute an Assignment of Mortgage in order for the transaction to be completed on February 24, 2015." (Id. at ¶ 18); see also (Doc. # 17-1 at 9)(assigning Nationstar's interest in the mortgage to Federal Home Loan Mortgage Corporation). Owens-Benniefield's "obligation at that point as of February 2015, was forgiven." (Doc. # 17 at ¶ 19); see also (Doc. # 17-1 at 11)(recording the release of mortgage).

Yet, on March 17, 2016, despite the mortgage debt having "been recorded and released by Federal Home Loan Mortgage Corporation," Nationstar began attempting to collect the debt. (Doc. # 17 at ¶ 21). Owens-Benniefield "began to receive numerous telephone calls from [Nationstar's] agents in attempts to collect a debt." (Id. at ¶ 22). Nationstar "placed multiple automated calls per day to [Owens-Benniefield's] cellular telephone for several months prior to the filing of this action." (Id. at ¶ 23). Nationstar also used a "prerecorded or artificial voice" during some phone calls. (Id. at ¶ 76). Between March and April of 2016, Nationstar

"placed at least 9 collection calls to [Owens-Benniefield's]
cellular telephone." (Id. at ¶ 24). Owens-Benniefield also
"received letters and mortgage statements" from Nationstar,
even though its "rights were assigned to Federal Home Loan
Mortgage Corporation." (Id. at ¶ 26; Doc. # 17-1 at 65-66;
79-80).

Nationstar then "prepared and recorded another
assignment of mortgage to Community Loan fund of New Jersey,"
which was "recorded on August 22, 2016, and dated June 27,
2016." (Id. at ¶ 27; Doc. # 17-1 at 31). According to Owens-
Benniefield, this was an "[i]nvasion of [her] personal
information as [Nationstar] had no right to give personal
information to [a] third party." (Doc. # 17 at ¶ 27). Indeed,
Nationstar "has transferred [Owens-Benniefield's]
confidential information to several third parties," including
an attorney in Michigan who "has stated he does not know [her]
and is un[a]ware of why [her] personal information was sent
to his office." (Id. at ¶ 30; Doc. # 17-1 at 33-35).

Nationstar also "placed debt on [Owens-Benniefield's]
credit report which caused [her] to be denied credit and has
caused [her] great emotional stress to try and clear this
matter." (Doc. # 17 at ¶ 28). But, Nationstar denied they
were trying to collect a debt in their communications with

the Consumer Protection Bureau. (Id. at ¶ 31). Nationstar "sent the Internal Revenue Service a mortgage interest statement which shows [Owens-Benniefield as] owing a balance of $132,009.33." (Id. at ¶ 32).

Owens-Benniefield filed suit in state court against Nationstar and other defendants in April of 2016, alleging various statutory and common law causes of action. (Doc. # 7 at 11; Doc. # 7-1). Subsequently, all claims except for a TCPA claim against Nationstar were dismissed in that action. The case remains pending as to the sole TCPA claim. (Doc. # 7 at 12).

Owens-Benniefield then initiated the present action in this Court on March 6, 2017. (Doc. # 1). Nationstar filed its motion for more definite statement or to dismiss on March 30, 2017. (Doc. # 6). The Court granted that motion on April 21, 2017. (Doc. # 14). Since initiation of this action, but before Owens-Benniefield filed her Amended Complaint, Nationstar acknowledged in a letter to the Florida Attorney General's Office that the debt was waived when Owens-Benniefield's deed-in-lieu was executed. (Doc. # 17 at ¶¶ 52, 199, 252; Doc. # 15-1).

Owens-Benniefield filed her Amended Complaint, alleging violations of the Fair Debt Collection Practices Act (FDCPA),

15 U.S.C. §§ 1692 <u>et</u> <u>seq.</u>; the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §§ 227 <u>et</u> <u>seq.</u>; the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 <u>et</u> <u>seq.</u>; the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, <u>et</u> <u>seq.</u>; the Graham–Leach–Bliley Act (GLBA), 15 U.S.C. §§ 6801, <u>et</u> <u>seq.</u>; the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. §§ 559.55 <u>et</u> <u>seq.</u>; and Chapter 494, Fla. Stat., governing mortgage brokerage and lending. (Doc. # 17). The Amended Complaint also asserts various common law claims including fraud, negligence, and intentional infliction of emotional distress. (<u>Id.</u>). Nationstar filed its Amended Motion to Dismiss the Amended Complaint on May 15, 2017. (Doc. # 23). Owens-Benniefield filed a response on May 23, 2017. (Doc. # 25). The Motion is ripe for review.

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the]

complaint and all reasonable inferences therefrom are taken as true."). However,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "The scope of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002).

Furthermore, the Court construes pro se pleadings liberally and holds them to a less stringent standard than those drafted by attorneys. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). But, "a pro se litigant is still required to conform to procedural rules, and a district judge is not required to rewrite a deficient pleading." McFarlin v. Douglas Cty., 587 F. App'x 593, 595 (11th Cir. 2014).

## III. Analysis

The Court will analyze each of Owens-Benniefield's eleven counts in turn.

## A.    FDCPA

Count 1 alleges Nationstar violated numerous provisions of the FDCPA. The Court notes as a preliminary matter that the FDCPA contains a one-year statute of limitations. 15 U.S.C. § 1692k(d). This action was initiated on March 6, 2017, so any communications sent before March 6, 2016, are time-barred under the FDCPA.

Nationstar contends the Amended Complaint does not state a claim under the FDCPA because Owens-Benniefield has insufficiently pled that Nationstar is a debt collector, engaged in debt collection activity, or otherwise violated the subsections identified by Owens-Benniefield.

### 1.    Debt Collector and Debt Collection Activity

First, Nationstar argues Owens-Benniefield has not sufficiently alleged facts to support a reasonable inference that it is a debt collector. (Doc. # 23 at 2). A "debt collector" includes, among others, (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Davidson v.

Capital One Bank, N.A., 797 F.3d 1309, 1314 (11th Cir. 2015)(quoting 15 U.S.C. § 1692a(6)).

An allegation merely tracking the statutory definition of debt collector is insufficient. See Farquharson v. Citibank, N.A., 664 F. App'x 793, 799–800 (11th Cir. 2016)("In their Amended Complaint, Plaintiffs assert that Citigroup and Wolfe are each 'debt collectors'; however, such 'threadbare recitals of a cause of action's elements' do not suffice."). Nationstar argues that its self-identification as a debt collector attempting to collect a debt in its letters and other communications with Owens-Benniefield, (Doc. # 17-1 at 65-66, 79-80), does not support that it is, in fact, a debt collector. See Fenello v. Bank of Am., NA, 577 F. App'x 899, 902 (11th Cir. 2014)("An entity cannot transform itself into a 'debt collector' within the meaning of the FDCPA simply by noting in a letter that it may be considered one under the Act."). Still, while it is not determinative, self-identification as a debt collector is relevant. See Bohringer v. Bayview Loan Servicing, LLC, 141 F. Supp. 3d 1229, 1240 (S.D. Fla. 2015)("[A]lthough not determinative, it is nevertheless relevant Bayview identified itself as a debt collector in the May 21 Letter." (internal citation omitted)). Here, Nationstar labeled itself as a debt

collector in a letter stating that Owens-Benniefield's loan was in default, a $50,000 payment was due within a month, and that the letter "[was] an attempt to collect a debt." (Doc. # 17-1 at 65).

Nationstar also asserts the other allegations do not plausibly show it is a debt collector. But, construing the Amended Complaint liberally, Owens-Benniefield has sufficiently alleged Nationstar is a debt collector. She alleges Nationstar is "engaged in the collection of debts from Florida consumers using the mail, internet and telephone" and "regularly attempts to collect consumer debt alleged to be due." (Doc. # 17 at ¶¶ 8, 11-12); see also Tharpe v. Nationstar Mortg. LLC, 632 F. App'x 586, 588 (11th Cir. 2016)("Nationstar contends that Tharpe's allegations that it is a 'debt collector' are vague and conclusory. They are not. Tharpe has alleged that Nationstar's business involves the regular collection of thousands of debts from thousands of consumers. That allegation, if true, would support a finding that Nationstar is a 'debt collector' within the scope of the FDCPA."). And Nationstar does not argue that, in the event it otherwise qualifies as a debt collector, it is nevertheless exempt from the FDCPA because the loan was not in default when it became the servicer. §

1692(a)(6)(F)(iii); see also Davidson, 797 F.3d at 1314 n.4 (stating that, regarding § 1692(a)(6)(F)(iii), "[e]ntities falling within this exclusion include mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing" (citation and internal quotation marks omitted)).

Next, Nationstar argues Owens-Benniefield has not sufficiently alleged its activities were connected with the collection of a debt. (Doc. # 23 at 4). "Although the FDCPA does not expressly set forth what constitutes collection-related activity, the Eleventh Circuit has held that 'if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the Act.'" Roth v. Nationstar Mortg., LLC, No. 2:15-cv-783-FtM-29MRM, 2016 WL 3570991, at *2 (M.D. Fla. July 1, 2016)(quoting Caceres v. McCalla Raymer, LLC, 755 F.3d 1299, 1302 (11th Cir. 2014)). In determining whether a communication is made in connection with the collection of a debt, some factors to look at are whether the communication references the amount owed, contains an "implicit or explicit demand for payment," or discusses "the repercussions if

payment [is] not tendered." <u>Pinson v. Albertelli Law Partners</u>
<u>LLC</u>, 618 F. App'x 551, 553-54 (11th Cir. 2015).

The Court agrees that Nationstar's assigning the
mortgage to another company, transferring its servicing
rights to another servicer, and notifying Owens-Benniefield
of both events is not debt collection activity. <u>Cf.</u> <u>Bohringer</u>,
141 F. Supp. 3d at 1234 ("[T]he letter was not made in
connection with the collection of a debt: it was simply an
initial communication to Plaintiffs that Bayview was the new
servicer of the Loan."). Indeed, under RESPA, Nationstar had
a duty to inform Owens-Benniefield of any assignment or
transfer of servicing. <u>See</u> 12 U.S.C. § 2605(b)(1). And the
letters sent by BSI Financial Services, the mortgage servicer
to whom Nationstar's servicing rights were transferred in
June of 2016, do not qualify as debt collection activity *by
Nationstar*.

But the earlier letters Nationstar sent, which noted the
default balance and specified a due date for payment, are
attributable to Nationstar. A March 15, 2016, letter from
Nationstar asserts Owens-Benniefield's "loan is currently
past due" and that "[f]ailure to pay $50,410.73 by 4/14/2016
[], may result in acceleration of the sums secured by the
Security Instrument, foreclosure proceedings and sale of the

property." (Doc. # 17-1 at 65-66). The letter explains the acceptable forms of payment and warns "Nationstar is a debt collector" and "[t]his is an attempt to collect a debt." (Id. at 65). Since the letter contains a demand for payment and highlights repercussions of nonpayment, this letter qualifies as debt collection activity.

Thus, the Court concludes that Nationstar is plausibly a debt collector and at least some of the conduct alleged qualifies as debt collection activity. Next, the Court will address each alleged violation of the FDCPA in turn.

### 2.  Section 1692c

Owens-Benniefield alleges Nationstar violated § 1692c by communicating "in connection with debt collection as it relates with third parties, as [Owens-Benniefield] did not give prior consent to the 'debt collector' [Nationstar] to communicate this debt to an attorney in Michigan and also to [its] affiliates and also by way of another Mortgage Company via a recorded assignment of mortgage." (Doc. # 17 at 4). Although she does not specify the subsection, it appears Owens-Benniefield is alleging a violation of § 1692c(b), which states, in relevant part,

> without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or

as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).

Owens-Benniefield has not plausibly alleged that Nationstar communicated, in connection with the collection of the debt, with the attorney in Michigan, its affiliates, or the mortgage company to whom the mortgage was assigned. As already discussed, Nationstar's assigning the mortgage to another company, and notifying Owens-Benniefield of the assignment, was not debt collection activity. Nor does Owens-Benniefield's vague allegation that Nationstar communicated with its affiliates create the plausible inference that the communications were made in connection with collection of the debt from Owens-Benniefield.

Nationstar did send a letter — a notice of servicing transfer — to an attorney in Michigan, apparently under the incorrect belief that this attorney represented Owens-Benniefield. (Doc. # 17-1 at 33). But, the notice was not sent in connection with the collection of a debt — it merely stated Nationstar was no longer the mortgage servicer. Owens-

Benniefield does not allege whether Nationstar sent other communications to the Michigan attorney. And the other letters Owens-Benniefield attaches were sent to the attorney by the subsequent servicer. Thus, the FDCPA claim is dismissed to the extent it is brought under § 1692c.

### 3. Section 1692d

Section 1692d states that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. "Banned conduct includes the 'use of violence,' the 'use of obscene or profane language,' and repeated phone calls intended to annoy or harass 'any person at the called number.'" <u>Miljkovic v. Shafritz & Dinkin, P.A.</u>, 791 F.3d 1291, 1305 (11th Cir. 2015). Claims under this section are viewed "from the perspective of a consumer whose circumstances make[] him relatively more susceptible to harassment, oppression, or abuse." <u>Jeter v. Credit Bureau, Inc.</u>, 760 F.2d 1168, 1179 (11th Cir. 1985).

Owens-Benniefield alleges Nationstar violated § 1692d because Nationstar's conduct "cause[d] harassment and abuse by ruining [Owens-Benniefield's] reputation" and "caus[ed] various calls to annoy [Owens-Benniefield] and harass for the collection of debt at various times of the day." (Doc. # 17

14

at 4). But Owens-Benniefield has not plausibly pled that the phone calls she received from Nationstar were harassing or abusive. "Although there is no definitive threshold for determining what frequency and volume of calls are necessary to violate the FCCPA, courts generally have held that one or two phone calls per day are not sufficient to violate the FDCPA or its state analogues, absent evidence of other egregious conduct associated with the calls." Wolhuter v. Carrington Mortg. Servs., LLC, No. 8:15-cv-552-MSS-TBM, 2015 WL 12819153, at *3 (M.D. Fla. Oct. 28, 2015), reconsideration denied, No. 8:15-cv-552-MSS-TBM, 2016 WL 7177620 (M.D. Fla. July 22, 2016). While Owens-Benniefield alleges Nationstar "placed multiple automated calls per day to [her]" for "several months," she does not allege these calls during the early morning or late evening hours. (Doc. # 17 at ¶ 23). Nor does she assert abusive or threatening language was used.

Owens-Benniefield also vaguely alleges Nationstar violated this section by ruining her reputation. Owens-Benniefield does not elaborate as to how her reputation has been ruined, besides alleging that her credit score suffered as a result of Nationstar's reporting the debt. Without more, Owens-Benniefield has not plausibly alleged Nationstar engaged in conduct the natural consequence of which was to

harass or abuse her by incorrectly reporting that Owens-Benniefield owed the debt. To the extent it is brought under § 1692d, the FDCPA claim is dismissed.

### 4.  Section 1692e

Owens-Benniefield alleges Nationstar violated § 1692e generally by

> using [] false, deceptive, and misleading representations and means in connection with debt collection when [Nationstar] failed to acknowledge [Owens-Benniefield's] Deed in lieu of foreclosure in which they were a party []. [Nationstar] charged fees, late fees, and insurance fees; by improperly threatening foreclosure; by threatening to file a foreclosure when [Nationstar] does not have a right to debt.

(Doc. # 17 at 4). Section 1692e states "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" and includes a nonexhaustive list of conduct that violates the statute. 15 U.S.C. § 1692e.

Section 1692e(2) makes "[t]he false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt" a violation of the FDCPA. 15 U.S.C. § 1692e(2). According to Owens-Benniefield, Nationstar violated § 1692e(2) both "by misrepresenting the character, amount, and

legal status of the subject loan after the deed of lieu was completed to [Owens-Benniefield]" and "by misrepresenting the character, amount, and legal status of the subject loan when they sent mortgage statements and payoff statements to [Owens-Benniefield] indicating a total amount due, [and] a detachable coupon giving [Owens-Benniefield] the impression she must pay [the] debt." (Doc. # 17 at 4-5). Section 1692e(8) prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Owens-Benniefield alleges Nationstar violated § 1692e(8) by "threatening to communicate and communicat[ing] false credit information, including that [Owens-Benniefield] has defaulted on the subject loan to various parties." (Doc. # 17 at 5).

The Court employs the "least sophisticated consumer" standard in determining whether a collection effort violates the FDCPA. LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 (11th Cir. 2010). This standard maintains an "objective component" and presumes that the "least sophisticated consumer" does "possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Id. at 1194. "[W]hether a letter is

misleading raises a question of fact. Generally speaking, 'a jury should determine whether the letter is deceptive and misleading.'" <u>Buchanan v. Northland Grp., Inc.</u>, 776 F.3d 393, 397 (6th Cir. 2015)(citation omitted). "Dismissal is appropriate only when it is 'apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.'" <u>McMahon v. LVNV Funding, LLC</u>, 744 F.3d 1010, 1020 (7th Cir. 2014)(citation omitted); <u>see also</u> <u>Buchanan</u>, 776 F.3d at 397 ("A claim may be implausible on its face because even an unsophisticated consumer would not be confused.").

Here, the letter sent in March of 2016 was an attempt to collect a debt. It stated that Nationstar was a debt collector and that the letter was an attempt to collect a debt. (Doc. # 17-1 at 65). The letter states Owens-Benniefield is in default on the loan, without mentioning that her obligation to pay ended when a deed-in-lieu was executed, and that failure to pay by a certain date "may result in acceleration . . . , foreclosure proceedings and sale of the property." (<u>Id.</u> at 65-66). Sending a letter stating that payment is necessary to prevent foreclosure on a mortgage from which a consumer had been released is misleading because that letter misrepresents the legal status and amount of the debt. <u>Cf.</u>

<u>Eide v. Colltech, Inc.</u>, 987 F. Supp. 2d 951, 961 n.5 (D. Minn. 2013)("[A] single letter from a debt collector that attempts to collect a debt that is not owing will raise multiple problems under the FDCPA. For example, if the debtor does not actually owe a debt, a debt collector's letter will necessarily misrepresent the identity of the creditor, as there will be no creditor."). Thus, this claim survives.

### 5.   Section 1692f

Section 1692f states "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Owens-Benniefield alleges Nationstar violated § 1692f by trying to collect payment even though it "had no present right to possession of the property claimed as collateral through an enforceable security interest." (Doc. # 17 at 4). She has plausibly pled that Nationstar's asserting her debt was still outstanding and that failure to pay may result in legal action against her was an unfair means of collecting or attempting to collect a debt.

### 6.   Section 1692g

Finally, Owens-Benniefield alleges Nationstar violated § 1692g, which specifies the required contents for notices of debt to be sent to consumers and requires debt collectors,

upon receiving a written dispute within 30 days of the notice, to "cease collection of the debt . . . until the debt collector obtains verification of the debt" and sends a copy of the verification to the consumer. 15 U.S.C. § 1692g(a)-(b). Owens-Benniefield states Nationstar violated this section because she "provided [Nationstar] in writing a 30 day letter[] indicating that [she] disputed [the] debt and a copy of such verification of debt." (Doc. # 17 at 5).

This claim is insufficiently pled. While Owens-Benniefield states she sent a written dispute within 30 days, she does not explicitly allege that Nationstar never obtained and sent a copy of the debt verification to her or that Nationstar continued its collection efforts before verifying the debt. Owens-Benniefield does not state when she sent the dispute letter to Nationstar, so the date at which Nationstar was required to cease collection activities cannot be determined. Accordingly, Owens-Benniefield has not plausibly alleged Nationstar violated this section of the FDCPA. The § 1692g claim within this count is dismissed.

Count 1 survives to the extent it states claims under §§ 1692(e) and (f).

**B.　FCRA**

Count 2 alleges Nationstar violated the FCRA by (1) reporting the unlawful debt to credit reporting agencies, who in turn placed the debt on Owens-Benniefield's credit report, and (2) reporting that the debt was valid after receiving Owens-Benniefield's dispute through the credit reporting agencies. (Doc. # 17 at 6-7). Throughout this count, Owens-Benniefield cites § 1681s-2(b) and § 1681i(a)(2), though it is unclear whether she asserts Nationstar violated both sections. Section 1681i "requires a consumer reporting agency to reinvestigate disputed information in a consumer's file if the consumer notifies the agency that the information is disputed." Allmond v. Bank of Am., No. 3-07-cv-186-J-33JRK, 2008 WL 205320, at *3 (M.D. Fla. Jan. 23, 2008)(citing 15 U.S.C. § 1681i). But Owens-Benniefield cannot state a cause of action under § 1681i because Nationstar is not a consumer reporting agency.

Section 1681s-2 of the FCRA generally outlines the responsibilities of furnishers of information to credit reporting agencies. Section 1681s-2(a) of the FCRA prohibits furnishers of credit information from providing false information to credit reporting agencies. "However, the statute explicitly bars private suits for violations of this

provision." Peart v. Shippie, 345 F. App'x 384, 386 (11th Cir. 2009). Still, the FCRA does create a private right of action for the enforcement of § 1681s-2(b), which "requires furnishers of credit information to investigate the accuracy of said information upon receiving notice of a dispute." Peart, 345 F. App'x at 386 (citing § 1681s-2(b)).

Here, Owens-Benniefield alleges that Nationstar both provided incorrect information to credit reporting agencies and other parties, and failed to remove the debt from her credit report, even after Owens-Benniefield disputed it to two credit reporting agencies. As explained above, Nationstar's reporting of incorrect information to credit reporting agencies cannot create a cause of action under § 1681s-2(b) because that conduct is only regulated by § 1681s-2(a). While Owens-Benniefield can pursue a claim under § 1681s-2(b) for Nationstar's conduct after it was notified of Owens-Benniefield's dispute, Owens-Benniefield has not provided sufficient facts to state a claim. Highly detailed facts and dates are not required, but more information about the content of Owens-Benniefield's dispute to the credit reporting agencies and about Nationstar's investigation, or lack thereof, are needed.

Owens-Benniefield does not specify whether Nationstar conducted an insufficient investigation or whether Nationstar failed to investigate at all. Nor does Owens-Benniefield elaborate as to how Nationstar's investigation, if one was initiated, was unreasonable. See <u>Smith v. Bank of Am. Home Loans</u>, 968 F. Supp. 2d 1159, 1167 (M.D. Fla. 2013)("It is unclear whether plaintiffs allege that Bank of America failed to conduct *any* investigation. To the extent an investigation was conducted, it is unclear how the investigation failed to meet the requirements of the statute. Therefore, plaintiffs have failed to put Bank of America on notice as to the nature of their alleged violation of 15 U.S.C. § 1681s-2(b)." (emphasis original)). Although Nationstar's failure to realize earlier that the deed-in-lieu had been executed is relevant (Doc. # 17 at ¶ 69), Owens-Benniefield should clearly allege whether Nationstar failed to investigate or merely investigated unreasonably. Also, because Owens-Benniefield has not pled whether Nationstar failed to investigate or how it failed to reasonably investigate, she has not sufficiently pled that Nationstar's failure was willful.

Finally, Owens-Benniefield complains Nationstar "responded to the Consumer Financial Protection Bureau that after [its] investigation that the reporting of the debt on

[Owens-Benniefield's] report was accurate and will remain on
[her] report." (Doc. # 17 at ¶ 63). The Consumer Financial
Protection Bureau is not a consumer reporting agency. See 15
U.S.C. § 1681a(f) ("The term 'consumer reporting agency'
means any person which, for monetary fees, dues, or on a
cooperative nonprofit basis, regularly engages in whole or in
part in the practice of assembling or evaluating consumer
credit information or other information on consumers for the
purpose of furnishing consumer reports to third parties . .
."). Therefore, Nationstar's duty to perform a reasonable
investigation of a consumer's dispute to a credit reporting
agency cannot have been triggered by Nationstar's
communications with the Bureau. To the extent her FCRA claim
relies on communications with the Bureau, the claim is
dismissed with prejudice.

Owens-Benniefield may replead her FCRA claim as to
Nationstar's investigation of the consumer reporting agency
disputes in her second amended complaint.

### C.   **TCPA**

"Section 227 of the TCPA makes it unlawful to make
collection calls using an ATDS or an artificial *or* prerecorded
voice." Gosneigh v. Nationstar Mortg., LLC, No. 8:16-cv-3040-
T-33AEP, 2017 WL 435818, at *2 (M.D. Fla. Feb. 1, 2017). Count

3 alleges Nationstar violated the TCPA by calling Owens-Benniefield's cell phone multiple times a day over several months using an "automatic telephone dialing system or a prerecorded or artificial voice." (Doc. # 17 at ¶¶ 23, 76). In support, Owens-Benniefield attaches a log of seven calls, with notes beside each. (Doc. # 17-1 at 46-47).

Nationstar complains Owens-Benniefield does not provide factual allegations about the use of an artificial or prerecorded voice during some calls. It notes the call log shows that, for each call, she either spoke with an actual employee or the call went to voicemail without a message being left. (Doc. # 23 at 9). While it seems implausible Owens-Benniefield could know an artificial or prerecorded voice was used for these calls, Owens-Benniefield alleges she received numerous calls for months — not just the calls shown on the log. Therefore, the call log does not contradict the assertion that an artificial or prerecorded voice was used in some calls.

And Owens-Benniefield alleges facts sufficient to create the inference that Nationstar called her using an ATDS. "[W]ell-pled allegations of an ATDS rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar

messages to raise an inference that an ATDS was used." <u>Gragg</u>
<u>v. Orange Cab Co.</u>, 942 F. Supp. 2d 1111, 1114 (W.D. Wash.
2013)(internal quotation marks omitted). Owens-Benniefield
alleges she received multiple calls a day for months, which
supports that an ATDS was used. <u>Cf.</u> <u>Neptune v. Whetstone</u>
<u>Partners, LLC</u>, 34 F. Supp. 3d 1247, 1250 (S.D. Fla. 2014)
(denying motion to dismiss and noting allegations that the
defendant called forty-five times, called "several times" in
one day, called "on back to back days," and employed
prerecorded messages with "generic content"). Although she
logged only seven calls made in March of 2016, two calls were
made on the same day and Owens-Benniefield noted that every
conversation with an employee began with a pause. (Doc. # 17-
1 at 46-47); <u>see</u> <u>Padilla v. Whetstone Partners, LLC</u>, No. 14-
21079-CIV, 2014 WL 3418490, at *2 (S.D. Fla. July 14,
2014)(noting a plaintiff could support that an ATDS was used
by, among other things, "detail[ing] whether there was a pause
upon his answering the call"). Therefore, Owens-Benniefield
has plausibly alleged that an ATDS was used and the TCPA claim
survives.

Regarding remedies, Owens-Benniefield seeks a "permanent
injunction prohibiting [Nationstar] from placing nonemergency
calls" to her phone using an ATDS or artificial or prerecorded

voice. (Doc. # 17 at ¶ 85). Nationstar complains that "[t]his remedy is not available under the TCPA." (Doc. # 23 at 9). But, while the TCPA does not specifically allow for "permanent injunctions," it does allow a plaintiff to bring an action "to enjoin [further] violation" of § 227(b). 47 U.S.C. § 227(b)(3)(A). Construing the Amended Complaint liberally, Owens-Benniefield has sufficiently prayed for injunctive relief for her TCPA claim. Owens-Benniefield also seeks an award of "actual damages in an amount to be determined at trial and $500.00 in statutory damages per violation and $1,500.00 for each willful or knowing violation." (Doc. # 17 at ¶ 86). But the TCPA allows for the recovery of either $500 in statutory damages or "actual monetary loss" caused by each violation, "whichever is greater." § 227(b)(3)(B). Thus, Owens-Benniefield cannot recover both actual monetary loss and statutory damages.

### D. **FCCPA**

In Count 4, Owens-Benniefield alleges Nationstar violated the FCCPA. It "violated sections 559.72(5), (6) when [Nationstar] represented that [Owens-Benniefield] had defaulted on the debt, while knowing that this information was false" and "violated section 559.72(9) by attempting to enforce a debt . . . which [it] knew was not [] legitimate."

(Doc. # 17 at 8). Owens-Benniefield includes numerous other allegations regarding Nationstar's communications with her and various third parties, (Id. at 8-10), but she fails to identify which sections or subsections of the FCCPA these acts violated.

"The elements necessary to plead a claim under the FCCPA are similar but distinguishable from the elements of establishing a claim under the FDCPA." Deutsche Bank Nat. Tr. Co. v. Foxx, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013). "The first prong is substantially identical to the FDCPA, as the FCCPA only applies to consumer debt." Id. "The second prong differs from the FDCPA in that the FCCPA prohibits acts of 'persons' and, accordingly, is not limited to 'debt collectors.'" Id. "The third prong requires an act or omission prohibited by the FCCPA." Id.

Sections 559.72(5) and (6) provide that a person, in collecting a debt, shall not:

> (5) Disclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false.
>
> (6) Disclose information concerning the existence of a debt known to be reasonably disputed by the debtor without disclosing that fact. If a

> disclosure is made before such dispute has been
> asserted and written notice is received from the
> debtor that any part of the debt is disputed, and
> if such dispute is reasonable, the person who made
> the original disclosure must reveal upon the
> request of the debtor within 30 days the details of
> the dispute to each person to whom disclosure of
> the debt without notice of the dispute was made
> within the preceding 90 days.

Fla. Stat. § 559.72(5)-(6). Owens-Benniefield alleges Nationstar violated these subsections because it maintained Owens-Benniefield had defaulted on her mortgage even though it was "a party to the Deed-in-Lieu of foreclosure that was completed with no deficiency and when [Owens-Benniefield] notified [it] numerous times information was inaccurate." (Doc. # 17 at ¶ 91). To the extent Owens-Benniefield alleges Nationstar asserted the debt was valid in response to inquiries by the Consumer Financial Protection Bureau and Attorney General, she has not plausibly stated a claim. Those entities communicated Owens-Benniefield's dispute to Nationstar, who in turn stated the dispute was without merit. While Nationstar's answer to those entities was incorrect, it was not a disclosure of information concerning the existence of a debt made without acknowledging the disputed nature of the debt.

But, at least to the extent Owens-Benniefield is basing this claim on Nationstar's furnishing information about the

debt to credit reporting agencies, that activity plausibly falls within the language of subsections (5) and (6). And Nationstar has not argued such claims are preempted. See Osborne v. Vericrest Fin., Inc., No. 8:11–cv–716–T–30TBM, 2011 WL 1878227, at *2–3 (M.D. Fla. May 17, 2011)("Defendant's motion to dismiss based on preemption is granted to the extent that the FCCPA claim is premised on credit reporting activity."). Therefore, at this juncture, the § 559.72(5) and (6) claim survives.

Section 559.72(9) prohibits a person collecting a debt from "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." § 559.72(9). Owens-Benniefield has plausibly alleged Nationstar violated this provision by continuing its attempts to collect the mortgage debt even though that debt had been waived through a deed-in-lieu — a fact of which Owens-Benniefield frequently reminded Nationstar. Cf. Leahy-Fernandez v. Bayview Loan Servicing, LLC, 159 F. Supp. 3d 1294, 1305 (M.D. Fla. 2016)(holding plaintiff debtor had plausibly alleged violation of section 559.72(9) where she alleged her mortgage debt was discharged in bankruptcy but the defendant mortgage

servicer still "attempt[ed] to collect from her personally"). Thus, this count survives.

**E.  Negligence**

Count 5 roughly alleges Nationstar was negligent in four ways: (1) by "failing to keep track of the files that they no longer service"; (2) by failing to look into her allegation that the debt was forgiven, even though Owens-Benniefield communicated this to Nationstar employees and third parties; (3) by "shar[ing] [her] personal information" with third parties; and (4) by "misrepresent[ing] the fact that they were the legal 'servicers' of the property." (Doc. # 17 at 11-13).

Under Florida law,

> [t]he basic elements of a negligence action are well-established: (1) a legal duty on the part of the defendant towards the plaintiff under the circumstances; (2) a breach of that duty by the defendant; (3) the defendant's breach of duty was both the actual and proximate cause of the plaintiff's injuries; and (4) the defendant suffered damages as a result of the breach.

Pinchinat v. Graco Children's Prod., Inc., 390 F. Supp. 2d 1141, 1149 (M.D. Fla. 2005). "Duty is a matter of law that is to be determined by the Court." Janis v. Pratt & Whitney Canada, Inc., 370 F. Supp. 2d 1226, 1229 (M.D. Fla. 2005). "A legal duty may arise from legislation, case law, or the

general facts of the case." Id. "The plaintiffs must show that there is a common law or statutory duty of care with respect to the alleged negligent conduct." McLean, 2008 WL 1956285, at *22.

Nationstar argues Owens-Benniefield has not plausibly alleged it owed her any duty. (Doc. # 23 at 11-12). Nationstar is correct that section 95.11, Fla. Stat., does not establish that it owed Owens-Benniefield a duty. That statute sets the statute of limitations for various causes of action. Fla. Stat. § 95.11. It does not prohibit any conduct or create any private right of action. Thus, to the extent her claim relies on section 95.11, the negligence claim is dismissed with prejudice.

Next, after noting that Owens-Benniefield bases her negligence claim in part on Nationstar's alleged violation of the FDCPA, Nationstar asserts "[i]ndustry standards do not impose tort duties." (Doc. # 23 at 12). But, the FDCPA is a federal statute, compliance with which is not merely standard industry practice. Nationstar presents no argument as to whether the FDCPA, as a federal statute, can serve as the basis for its alleged duty, so the Court need not address that issue.

And Owens-Benniefield alleges, though not in the clearest manner, that Nationstar shared her personal information with a number of third parties when it assigned the already-forgiven debt to another company. One such third party was an attorney who did not represent her and was not involved in the assignment of mortgage. In her exhibits, Owens-Benniefield includes a letter from Nationstar, which outlines when Nationstar will share borrowers' personal information and when a borrower is able to limit such disclosure. (Doc. # 17-1 at 77-78).

Providing personal information to parties unaffiliated with Nationstar and uninvolved with any transaction related to a borrower's mortgage is plausibly excluded from the ways in which Nationstar is allowed to share personal information without consent. Thus, Owens-Benniefield has plausibly alleged that Nationstar, as her former loan servicer, had a duty not to provide her personal information to parties unconnected with any transaction related to Owens-Benniefield's mortgage. And Nationstar has not argued that mortgage servicers like itself have no duty to prevent the disclosure of a borrower's personal information to third parties totally unconnected to its business. Therefore, her negligence claim survives.

Finally, Nationstar argues Owens-Benniefield has not sufficiently pled a basis for punitive damages. (Doc. # 23 at 22-23). "[A] plaintiff seeking punitive damages under Florida Statute § 768.72 cannot state a claim by merely making conclusory allegations; rather, a plaintiff must plead specific acts committed by the defendant showing intentional misconduct or gross negligence." Nunez v. J.P. Morgan Chase Bank, N.A., No. 6:14-cv-1485-Orl-31GJK, 2017 WL 735391, at *2 (M.D. Fla. Feb. 24, 2017). "'Intentional misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." Fla. Stat. § 768.72(2)(a). "'Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b).

Accepting the Amended Complaint's allegations as true, Owens-Benniefield has plausibly pled intentional misconduct or gross negligence by Nationstar. Cf. Nunez, 2017 WL 735391, at *3 (denying motion for judgment on the pleadings as to punitive damages where plaintiff alleged she entered a valid

mortgage modification agreement with defendant mortgage servicer but servicer still sought foreclosure and continued sending letters claiming plaintiff was in default despite notification of the error); Goodin v. Bank of Am., N.A., 114 F. Supp. 3d 1197, 1215 (M.D. Fla. 2015)(finding that the defendant bank was liable for punitive damages after it took no action to prevent errors from occurring, even after repeated notifications from the plaintiffs). Owens-Benniefield's claim for punitive damages survives.

### F.   RESPA

Count 6 alleges Nationstar violated two sections of RESPA, 12 U.S.C. §§ 2605 and 2609. (Doc. # 17 at 14-15). Section 2605(a) requires lenders to "disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding." § 2605(a). Section 2605(b)(1) dictates that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." § 2605(b)(1). Nationstar allegedly violated multiple subsections of § 2605 when it "prepared an assignment of mortgage to Community Loan Fund of New Jersey, Inc." and

"transferred this loan to another party" and "responded to the Bureau that the loan was accurate" and when it "failed to protect [Owens-Benniefield's] credit rating." (Doc. # 17 at 14-15).

But Owens-Benniefield does not allege that Nationstar failed to notify her the loan could be transferred or assigned when she obtained the mortgage, or that she was not notified of the assignment of her mortgage or transfer of loan servicing in the statutory timeframe. Rather, she complains that the mortgage never should have been assigned or transferred at all. Such allegations do not state a claim under § 2605. Similarly, § 2605 does not create causes of action for failure to protect Owens-Benniefield's credit rating or for incorrectly responding to the Consumer Financial Protection Bureau. And, because Owens-Benniefield has failed to state a claim for violation of § 2605, she has also failed to plead a pattern or practice of noncompliance so as to justify additional damages up to $2,000 under § 2605(f)(1)(A). This claim is dismissed with leave to amend so that Owens-Benniefield may attempt to state a claim under this section, if possible.

Next, Owens-Benniefield alleges Nationstar violated § 2609 "when [it] initiated an advancement for property

insurance [that] was paid from the escrow account on the loan," "when [Nationstar] sent letters to [her] demanding she produce insurance for the property," and "when [Nationstar] sent notification of shortage in escrow account when there was none." (Doc. # 17 at 15). Section 2609 limits the extent to which mortgage lenders may require borrowers to deposit money in escrow accounts and requires servicers to provide borrowers with escrow account statements. 12 U.S.C. § 2609. There is no private right of action under this section. See 12 U.S.C. § 2609(d)(1) (providing for penalties for violation of subsection (c) as follows: "[i]n the case of each failure to submit a statement to a borrower [], **the Secretary shall assess** to the lender or escrow servicer failing to submit the statement a civil penalty of $50 for each such failure" (emphasis added)); State of Louisiana v. Litton Mortg. Co., 50 F.3d 1298, 1301–02 (5th Cir. 1995)(concluding there is also no private right of action under § 2609(a)). Owens-Benniefield cannot state a claim under § 2609 and should not include claims for violation of this section in her second amended complaint.

Owens-Benniefield may amend her RESPA claim under § 2605.

### G.  GLBA

Count 7 alleges Nationstar violated two sections of the GLBA, 15 U.S.C. §§ 6801 and 6802. (Doc. # 17 at 16-17). But "courts across the country have held that no private right of action exists for violations of the GLBA, whose text indicates that it is to be enforced by 'Federal functional regulators, the State insurance Authorities, and the Federal Trade Commission.'" <u>Winter Park Condo. Ltd. P'ship v. Wachovia Bank, Nat'l Ass'n</u>, No. 6:09-cv-218-Orl-31KR, 2009 WL 290992, at *1 (M.D. Fla. Feb. 6, 2009)(quoting 15 U.S.C. § 6805(a)); <u>see also</u> <u>Dunmire v. Morgan Stanley DW, Inc.</u>, 475 F.3d 956, 960 (8th Cir. 2007)("No private right of action exists for an alleged violation of the GLBA."). Therefore, Owens-Benniefield's claim under the GLBA is dismissed with prejudice.

### H.  Fraud

Count 8 alleges Nationstar committed fraud by insisting the debt was valid to Owens-Benniefield and third parties, including the Consumer Financial Protection Bureau and credit reporting agencies, and by assigning the mortgage to another company after the debt had been forgiven. (Doc. # 17 at 17-19). Under Florida law, "[a] fraud claim lies for: (1) misrepresentation of material fact; (2) by someone who knew

or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered in justifiable reliance on the representation." Zarrella v. Pac. Life Ins. Co., 755 F. Supp. 2d 1218, 1224 (S.D. Fla. 2010). Additionally, Rule 9(b) of the Federal Rules of Civil Procedure places more stringent pleading requirements on cases alleging fraud. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1305 (11th Cir. 2002).

This count fails to state a claim for fraud because Owens-Benniefield fails to identify how she was misled by or relied upon Nationstar's allegedly fraudulent statements. The Amended Complaint alleges Owens-Benniefield vigorously disputed Nationstar's assertion that she owed a debt — both to Nationstar and third parties. Thus, the Amended Complaint does not plausibly plead that Owens-Benniefield relied on Nationstar's misrepresentation that she owed a debt. Cf. Patterson v. Downtown Med. & Diagnostic Ctr., Inc., 866 F. Supp. 1379, 1383 (M.D. Fla. 1994)(dismissing fraudulent misrepresentation claim because "Plaintiff [did] not plead any facts to support how she relied to her detriment on representations by the Defendant or what damages she suffered as a result of such reliance"). In her second amended

complaint, Owens-Benniefield should plead, if she can, how she relied on Nationstar's alleged misrepresentations.

## I.    Chapter 494, Fla. Stat.

Count 9 alleges Nationstar violated section 494.0025(4)-(5), Fla. Stat., by telling Owens-Benniefield and numerous third parties that Owens-Benniefield owed the debt and by misrepresenting that it was the legal servicer of the mortgage. (Doc. # 17 at 19-21). Section 494.0025, in relevant part, makes it unlawful for any person:

> (4) In any practice or transaction or course of business relating to the sale, purchase, negotiation, promotion, advertisement, or hypothecation of mortgage loan transactions, directly or indirectly:
>
> (a) To knowingly or willingly employ any device, scheme, or artifice to defraud;
>
> (b) To engage in any transaction, practice, or course of business which operates as a fraud upon any person in connection with the purchase or sale of any mortgage loan; or
>
> (c) To obtain property by fraud, willful misrepresentation of a future act, or false promise.
>
> (5) In any matter within the jurisdiction of the office, to knowingly and willfully falsify, conceal, or cover up by a trick, scheme, or device a material fact, make any false or fraudulent statement or representation, or make or use any false writing or document, knowing the same to contain any false or fraudulent statement or entry.

Fla. Stat. § 494.0025(4)-(5).

Nationstar argues there is no private right of action under this section. (Doc. # 23 at 15-16). Nationstar notes in a footnote that, in the state court action brought by Owens-Benniefield, the state court granted its motion to dismiss the section 494 claims with prejudice. (Id. at 16 n.6). But, under Rule 8(c), res judicata is an affirmative defense, Fed. R. Civ. P. 8(c)(1), and Nationstar does not argue that Owens-Benniefield's section 494 claims are precluded by the state court's dismissal. Thus, the Court will not address preclusion.

Although section 494.0025 includes no language about its enforcement, section 494.0019(1) provides:

> If a mortgage loan transaction is made in violation of **any provision of this chapter**, the person making the transaction and every licensee, director, or officer who participated in making the transaction are jointly and severally liable **to every party to the transaction in an action for damages incurred by the party or parties.**

§ 494.0019(1) (emphasis added). By its plain language, section 494.0019 creates a private right of action for damages for violations of any provision of chapter 494. And Nationstar does not argue that Owens-Benniefield's factual allegations fail to state a plausible claim for violation of section 494.0025. As the Court determines there is a private right of action, the Court denies Nationstar's Motion as to this Count.

However, regarding Owens-Benniefield's request for an injunction and fines pursuant to section 494.0013, Nationstar is correct that such relief is unavailable. Section 494.0013 specifies that the state administrative agency may bring an action for injunctive relief to prevent further violations of the statute. § 494.0013(1); see also Pounds v. Countrywide Home Loans, Inc., No. 12-60692-CIV, 2012 WL 4194420, at *2 (S.D. Fla. Sept. 19, 2012)(noting that section 494.0013 "allow[s] the state to issue injunctions, refund orders, or criminal penalties to non-complying [mortgage] brokers"). No mention is made of private individuals seeking injunctive relief, and the Court will not infer one. Similarly, Owens-Benniefield may not recover administrative fines up to $25,000 per offense pursuant to section 494.00255, as these penalties are imposed only by the state administrative agency. § 494.00255(2)(e)-(f). Instead, Owens-Benniefield may seek damages pursuant to section 494.0019(1).

**J.  FDUPTA**

Count 10 alleges Nationstar violated section 501.204, Fla. Stat., of FDUPTA and various other sections of Chapter 501. Nationstar argues the FDUPTA claim fails because Owens-Benniefield has not sufficiently alleged Nationstar engaged in trade or commerce. (Doc. # 23 at 16). "To state a claim

under FDUTPA, a plaintiff must allege (1) a deceptive or unfair practice in the course of trade or commerce, (2) causation, and (3) actual damages." Benjamin v. CitiMortgage, Inc., No. 12-62291-CIV, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013). "'Trade or commerce' means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." § 501.203(8).

"Several courts have held that debt collection activities are not 'trade or commerce' for FDUTPA purposes." Williams v. Nationwide Credit, Inc., 890 F. Supp. 2d 1319, 1321 (S.D. Fla. 2012). "In the rare instances where a court finds that a debt collection activity constitutes trade or commerce, the activity is actionable only to the extent that it is directed at the plaintiff." Miceli v. Dyck-O'Neal, Inc., No. 6:15-cv-1186-Orl-37KRS, 2016 WL 7666167, at *6 (M.D. Fla. Aug. 9, 2016). And, "[t]he 'trade and commerce' requirement is often not met in cases dealing with borrowers alleging FDUTPA violations against mortgage servicers." Bank of Am., N.A. v. Zaskey, No. 9:15-CV-81325, 2016 WL 2897410, at *10

(S.D. Fla. May 18, 2016)(quoting Benjamin, 2013 WL 1891284, at *4 (internal quotation marks omitted)).

Owens-Benniefield asserts Nationstar acted deceptively when it told the Florida Office of Financial Regulations that her "account was transferred to [Nationstar] for servicing as of June 16, 2015." (Doc. # 17 at ¶ 232). This was deceptive because "[Nationstar was] fully aware there was no trade or commerce given to [it] on this day." (Id.). But Nationstar was not advertising, soliciting, or offering any good or service when it responded to a complaint Owens-Benniefield filed with the Office of Financial Regulations. Cf. Blake v. Seterus, Inc., No. 16-21225-CIV-JLK, 2017 WL 543223, at *2 (S.D. Fla. Feb. 9, 2017)("Here, the Defendant loan servicer was not engaged in any advertisement or solicitation when it responded to Plaintiff's request for the reinstatement amount."). Nor does Nationstar's providing information to credit reporting agencies, or answering inquiries by the Consumer Financial Protection Bureau and Florida Attorney General's Office qualify as trade or commerce.

Owens-Benniefield has not sufficiently alleged Nationstar's calls and letter requesting payment were "trade or commerce." See Id. at *2 ("An FDUPTA claim cannot be asserted against a defendant who is simply collecting a

debt."). Furthermore, Owens-Benniefield fails to allege she incurred actual damages as a result of Nationstar's unfair acts. See § 501.211(2) (allowing consumers to recover only "actual damages" for a loss incurred as a result of the violation). Accordingly, Owens-Benniefield's FDUPTA claim is dismissed with leave to amend.

Regarding section 501.1377, which is not part of FDUPTA, Owens-Benniefield alleges Nationstar violated this section by continuing to seek repayment of the debt even though a deed-in-lieu of foreclosure had been executed. (Doc. # 17 at 22-23). Section 501.1377 prohibits a foreclosure-rescue consultant from "[e]ngag[ing] in or initiat[ing] foreclosure-related rescue services without first executing a written agreement with the homeowner for foreclosure-related rescue services" or from "[s]olicit[ing], charg[ing], receiv[ing], or attempt[ing] to collect or secure payment, directly or indirectly, for foreclosure-related rescue services before completing or performing all services contained in the agreement for foreclosure-related rescue services." Fla. Stat. § 501.1377(3).

Nationstar argues Owens-Benniefield has failed to state a claim for violation of 501.1377 because she "fails to allege residential foreclosure proceedings, or any foreclosure

rescue transaction." (Doc. # 23 at 20). The Court agrees. While Owens-Benniefield alleges she executed a deed-in-lieu of foreclosure years beforehand, she does not allege Nationstar's subsequent attempts to collect the debt were related to foreclosure proceedings or foreclosure rescue services. Additionally, because this section provides the same remedies as FDUPTA, Owens-Benniefield may recover only her actual damages. This claim is dismissed with leave to amend so Owens-Benniefield may state a claim under this section, if possible. Because section 501.1377 is not actually part of FDUPTA, Owens-Benniefield should state this claim in a separate count.

Owens-Benniefield also tries to bring a claim under section 501.171, which requires entities covered by the section to "take reasonable measures to protect and secure data in electronic form containing personal information." Fla. Stat. § 501.171(2). This section is not part of FDUPTA and specifies: "This section does not establish a private cause of action." § 501.171(10). Thus, Owens-Benniefield cannot state a claim under this section. Owens-Benniefield's claim is dismissed with prejudice to the extent it seeks relief under section 501.171.

**K.  Intentional Infliction of Emotional Distress**

Count 11 for "Emotional Distress" states in its entirety: "Plaintiff re-alleges paragraphs 14-33 of this Complaint as though full stated here." (Doc. # 17 at 25). "In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege facts showing outrageous conduct by the defendant." <u>Delfrate v. Liberty Mut. Fire Ins. Co.</u>, 727 F. Supp. 2d 1307, 1309 (M.D. Fla. 2010). "Whether alleged conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a matter of law, not a question of fact." <u>Gandy v. Trans World Comput. Tech. Grp.</u>, 787 So. 2d 116, 119 (Fla. 2nd DCA 2001). "A plaintiff fails to show outrageous conduct even if the plaintiff alleges that the defendant's conduct was (1) intentionally tortious or criminal, (2) intended to inflict emotional distress, (3) malicious, or (4) aggravated enough to warrant punitive damages." <u>Delfrate</u>, 727 F. Supp. 2d at 1309. Instead, the defendant's conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Metro. Life Ins. Co. v. McCarson</u>, 467 So. 2d

277, 278-79 (Fla. 1985)(quoting Restatement (Second) of Torts § 46 (1965)).

Taking the Amended Complaint's allegations as true, Nationstar's conduct was not outrageous as a matter of law. Compare McGinity v. Tracfone Wireless, Inc., 5 F. Supp. 3d 1337, 1341-42 (M.D. Fla. 2014)(dismissing claim with prejudice because the alleged conduct — the defendant prepaid wireless provider's employee calling plaintiff and threatening to kill her if she did not pay him — was not outrageous), with Sherer v. Rubin Mem'l Chapel, Ltd., 452 So. 2d 574, 575 (Fla. 4th DCA 1984)(reversing dismissal where a funeral home dressed the wrong corpse, tried to convince plaintiffs that the corpse was their deceased relative, and, after the truth came to light, still refused to dress the deceased relative, instead throwing clothes over the body). Therefore, this claim is dismissed with prejudice.

## IV. **Conclusion**

Nationstar's Motion is granted in part and denied in part. Counts 1, 3, 4, 5, and 9 are not dismissed. Counts 7 and 11 are dismissed with prejudice. Owens-Benniefield may file a second amended complaint as to Counts 2, 6, 8, and 10 by **July 13, 2017,** failing which, these claims will be dismissed without further notice. If Owens-Benniefield

chooses to file a second amended complaint, she should remember to include the non-dismissed counts (Counts 1, 3, 4, 5, and 9) as well as the amended counts.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED:**

(1) Defendant Nationstar Mortgage, LLC's Amended Motion to Dismiss (Doc. # 23) is **GRANTED IN PART AND DENIED IN PART.**

(2) The Motion is **DENIED** as to Counts 1, 3, 4, 5, and 9 of the Amended Complaint (Doc. # 17), to the extent set forth herein.

(3) Counts 7 and 11 are **DISMISSED WITH PREJUDICE.**

(4) Plaintiff Vickie Owens-Benniefield may file a second amended complaint as to Counts 2, 6, 8, and 10 by **July 13, 2017**, failing which, these claims will be dismissed without further notice.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 15th day of June, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE