UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICKIE OWENS-BENNIEFIELD,

    Plaintiff,

v.                        Case No.: 8:17-cv-540-T-33TGW

NATIONSTAR MORTGAGE LLC,

    Defendant.

_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Nationstar Mortgage LLC's Motion to Dismiss Counts 2, 6, 7, 8, 10, 11, and 12 of the Second Amended Complaint (Doc. # 31), filed on July 7, 2017. Pro se Plaintiff Vickie Owens-Benniefield filed a response on July 17, 2017. (Doc. # 33). For the reasons that follow, the Motion is granted in part and denied in part.

**I.**    **Background**

In January of 2008, Owens-Benniefield took out a mortgage to purchase a property in Tampa, Florida. (Doc. # 29 at ¶¶ 14-15). Owens-Benniefield struggled to pay the mortgage, so she "completed a deed in lieu of foreclosure in which the debt was forgiven by Federal Home Loan Mortgage Corporation on February 24, 2015." (Id. at ¶ 15). Owens-

1

Benniefield received a letter, which was addressed to the Comptroller of the Currency and indicated "the Deed in Lieu of Foreclosure was approved by the investor Federal Home Loan Mortgage Corporation." (Id. at ¶ 17). Defendant Nationstar Mortgage LLC "was a party to the transaction as they had to execute an Assignment of Mortgage in order for the transaction to be completed on February 24, 2015." (Id. at ¶ 18). Owens-Benniefield's "obligation at that point as of February 2015, was forgiven." (Id. at ¶ 19).

Yet, on March 17, 2016, despite the mortgage debt having "been recorded and released by Federal Home Loan Mortgage Corporation," Nationstar began attempting to collect the debt. (Id. at ¶ 21). Owens-Benniefield "began to receive numerous telephone calls from [Nationstar's] agents in attempts to collect a debt." (Id. at ¶ 22). Nationstar "placed multiple automated calls per day to [Owens-Benniefield's] cellular telephone for several months prior to the filing of this action." (Id. at ¶ 23). Nationstar also used a "prerecorded or artificial voice" during some phone calls. (Id. at ¶ 90). Between March and April of 2016, Nationstar "placed at least 9 collection calls to [Owens-Benniefield's] cellular telephone." (Id. at ¶ 24). Owens-Benniefield also "received letters and mortgage statements" from Nationstar,

even though its "rights were assigned to Federal Home Loan Mortgage Corporation." (Id. at ¶ 26).

Nationstar then "prepared and recorded another assignment of mortgage to Community Loan fund of New Jersey," which was "recorded on August 22, 2016, and dated June 27, 2016." (Id. at ¶ 27). According to Owens-Benniefield, this was an "[i]nvasion of [her] personal information as [Nationstar] had no right to give personal information to [a] third party." (Id.). Indeed, Nationstar "has transferred [Owens-Benniefield's] confidential information to several third parties," including an attorney in Michigan who "has stated he does not know [her] and is un[a]ware of why [her] personal information was sent to his office." (Id. at ¶ 30).

Nationstar also "placed debt on [Owens-Benniefield's] credit report which caused [her] to be denied credit and has cause[d] [her] great emotional stress to try and clear this matter." (Id. at ¶ 28). But, Nationstar denied it was trying to collect a debt in its communications with the Consumer Financial Protection Bureau. (Id. at ¶ 31). Nationstar "sent the Internal Revenue Service a mortgage interest statement which shows [Owens-Benniefield as] owing a balance of $132,009.33." (Id. at ¶ 32).

Owens-Benniefield then initiated the present action in this Court on March 6, 2017. (Doc. # 1). Nationstar filed its motion for more definite statement or to dismiss on March 30, 2017. (Doc. # 6). The Court granted that motion on April 21, 2017. (Doc. # 14). Since initiation of this action, Nationstar acknowledged in a letter to the Florida Attorney General's Office that the debt was waived when Owens-Benniefield's deed-in-lieu was executed. (Doc. # 29 at ¶¶ 52, 241).

Owens-Benniefield filed her Amended Complaint, alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 et seq.; the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §§ 227 et seq.; the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 et seq.; the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, et seq.; the Graham-Leach-Bliley Act (GLBA), 15 U.S.C. §§ 6801, et seq.; the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. §§ 559.55 et seq.; and Chapter 494, Fla. Stat., governing mortgage brokerage and lending. (Doc. # 17). The Amended Complaint also asserted various common law claims including fraud, negligence, and intentional infliction of emotional distress. (Id.). Nationstar filed its Amended Motion to Dismiss the Amended Complaint on May 15, 2017, (Doc. # 23), which the Court granted in part and denied in part on

4

June 15, 2017, (Doc. # 28). In that Order, the Court dismissed Owens-Benniefield's GLBA and intentional infliction of emotional distress claims with prejudice, and dismissed her FCRA, RESPA, FDUPTA, and fraud claims with leave to amend. (Id. at 48-49).

Owens-Benniefield then filed her Second Amended Complaint on June 23, 2017. (Doc. # 29). Nationstar now moves to dismiss Counts 2, 6, 7, 8, 10, 11, and 12 of the Second Amended Complaint. (Doc. # 31). Owens-Benniefield has responded in opposition. (Doc. # 33). The Motion is now ripe for review.

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However,

> [w]hile a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

"The scope of review must be limited to the four corners of the complaint." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002). Still, a "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)(internal citation omitted).

Furthermore, the Court construes pro se pleadings liberally and holds them to a less stringent standard than those drafted by attorneys. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). But, "a pro se litigant is still required to conform to procedural rules, and a district judge

6

is not required to rewrite a deficient pleading." <u>McFarlin v.</u>
<u>Douglas Cty.</u>, 587 F. App'x 593, 595 (11th Cir. 2014).

### III. **Analysis**

The Court will analyze each of the seven challenged
counts in turn.

#### A. **FCRA**

Count 2 is an FCRA claim. The Court dismissed this claim
from the Amended Complaint with leave to amend as to 15 U.S.C.
§ 1681s-2(b) because "Owens-Benniefield [did] not specify
whether Nationstar conducted an insufficient investigation or
. . . failed to investigate at all" and did not "elaborate as
to how Nationstar's investigation, if one was initiated, was
unreasonable." (Doc. # 28 at 22-23). The Court also advised
that Owens-Benniefield's claim was dismissed with prejudice
"[t]o the extent [it] relies on communications with the
[Consumer Financial Protection] Bureau," because the Bureau
is not a credit reporting agency. (<u>Id.</u> at 23-24).

In the Second Amended Complaint, Owens-Benniefield now
pleads that Nationstar "did an incomplete investigation,"
even though Owens-Benniefield had provided the credit
reporting agencies with proof the debt was forgiven, which
was passed along to Nationstar. (Doc. # 29 at 6-7). Despite
the evidence of the deed-in-lieu and release of the debt,

Nationstar refused on multiple occasions to change the reporting of Owens-Benniefield's payment history and outstanding balance on her credit reports. (Id. at 7-8).

Nationstar argues that the re-pled Count 2 still suffers from the previous pleading deficiencies and should be dismissed with prejudice. (Doc. # 31 at 2). It asserts Owens-Benniefield "fails to plausibly allege how [its] investigation was unreasonable" and that the "FCRA does not grant any right to removal of debt," as Owens-Benniefield alleges Nationstar should have done. (Id. at 3).

The Court disagrees with Nationstar. Reading the Second Amended Complaint liberally in light of Owens-Benniefield's pro se status, the Court finds she has sufficiently pled a claim for violation of § 1681s-2(b). Owens-Benniefield identifies numerous disputes she made to credit reporting agencies; alleges Nationstar failed to complete a reasonable investigation; and that the investigation was unreasonable because Nationstar ignored the documents provided by Owens-Benniefield that proved the debt was forgiven. While Nationstar takes issue with the phrasing "remove incorrect reporting" used in this count, it is apparent Owens-Benniefield requested Nationstar modify its reporting to the credit reporting agencies to indicate that she no longer owed

a debt or otherwise delete that item of information, as required by the FCRA.

Therefore, Owens-Benniefield's claim under § 1681s-2(b) survives to the extent it is based on Nationstar's failure to reasonably investigate the disputes Owens-Benniefield made to the credit reporting agencies Experian and Equifax. The Court also finds Owens-Benniefield has sufficiently alleged willfulness by Nationstar to support the request for statutory and punitive damages. See 15 U.S.C. § 1681n(a) (allowing for recovery of actual or statutory damages, as well as punitive damages, for willful noncompliance with the FCRA). She alleges Nationstar was sent multiple disputes by both Experian and Equifax with documentation showing the debt was forgiven, yet Nationstar persisted in reporting the debt as valid. At this juncture, this allegation plausibly supports a finding of willful noncompliance.

But, Nationstar is correct that Owens-Benniefield may not seek damages for "loss of consortium" because a claim for loss of consortium must be pled by the spouse of the injured party. See Bratt v. Genovese, No. 8:13-cv-3210-T-36AEP, 2014 WL 6832644, at *4 (M.D. Fla. Dec. 3, 2014)("A claim for loss of consortium is derivative - that is, it is actionable only if the plaintiff can demonstrate that the defendant is liable

to his or her spouse in tort."); <u>Reed v. Long</u>, 111 So. 3d 237, 240 (Fla. 4th DCA 2013)(explaining that a claim for loss of consortium "is the claim of the spouse who does not suffer physical injury"). But Owens-Benniefield, as the sole plaintiff, pleads she is the injured party. Therefore, while her FCRA claim survives, Owens-Benniefield may not seek damages for "loss of consortium" for this or any other cause of action in the Second Amended Complaint.

### B. <u>RESPA</u>

In its previous Order, the Court dismissed the RESPA claim with leave to amend as to 12 U.S.C. § 2605. (Doc. # 28 at 35-37). Count 6 of the Second Amended Complaint again asserts a claim under various subsections of § 2605. (Doc. # 29 at 16-19).

Owens-Benniefield fails to state a claim for violation of § 2605(a). Section 2605(a) requires lenders to "disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding." § 2605(a). But Owens-Benniefield never alleges that Nationstar failed to notify her the loan could be transferred or assigned when she obtained the mortgage. Rather, Owens-Benniefield focuses on

Nationstar's behavior years after the mortgage was obtained. Therefore, Owens-Benniefield has not stated a claim under § 2605(a).

Section 2605(b) dictates that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person" at least fifteen days "before the effective date of transfer of the servicing of the mortgage loan." § 2605(b)(1)-(2)(A). Owens-Benniefield alleges that Nationstar violated this subsection because it sent a transfer of servicing letter to the wrong address — the attorney in Michigan — so Owens-Benniefield did not receive the letter until after the effective date of transfer. (Doc. # 29 at ¶¶ 174-75).

Nationstar argues this is insufficient to state a claim because the date of the transfer letter, June 8, 2016, shows that it was sent fifteen days before the effective transfer date of June 23, 2016. (Doc. # 31 at 4-5). Although the letter was sent to the incorrect address, Nationstar asserts — without citation to authority — that it complied with § 2605(b) by sending the letter fifteen days before the transfer. But the Court need not address this question because

Owens-Benniefield has failed to plausibly allege actual damages.

Section 2605(f) only provides for actual damages caused by a violation or statutory damages in the case that the plaintiff demonstrates a pattern or practice of violations by the defendant. § 2605(f). Owens-Benniefield alleges over $3,000 in damages incurred as a result of her initiating and pursuing this action, as well as medical costs related to problems she developed because of stress caused by Nationstar's actions. (Doc. # 29 at 19). Nationstar argues, and the Court agrees, Owens-Benniefield cannot show that these alleged actual damages were caused by the notice of servicing transfer letter being sent to a wrong address, resulting in a few weeks delay for Owens-Benniefield to receive the letter. (Doc. # 31 at 5). Owens-Benniefield's medical bills and the costs related to this action, including filing fees and process server fees, were not direct damages Owens-Benniefield suffered because she received the notice of transfer letter late. She does not allege she made additional payments to Nationstar because she believed it was still her loan servicer after the effective date of transfer. Indeed, Owens-Benniefield had ceased making payments to Nationstar because of the deed-in-lieu of foreclosure long before the

servicing transfer. Therefore, she had not pled actual damages to support a claim under § 2605(b).

And, because Owens-Benniefield only noted that some of her mail was sent erroneously to an address in Michigan, she has failed to plead a pattern or practice of noncompliance to justify additional damages up to $2,000 under § 2605(f)(1)(A). See Porciello v. Bank of Am., N.A., No. 8:14-cv-1511-T-17AEP, 2015 WL 899942, at *3 (M.D. Fla. Mar. 3, 2015)("As a matter of law, the failure to respond to two QWR's is insufficient to establish a pattern and practice of non-compliance with the requirements of RESPA.").

Owens-Benniefield also complains that Nationstar failed to protect her credit rating. But she does not clearly invoke the subsection entitled "Protection of credit rating," § 2605(e)(3), which prohibits a servicer from "provid[ing] information regarding any overdue payment . . . to any consumer reporting agency" during the 60-day period after receiving a qualified written dispute from the consumer. § 2605(e)(3). Furthermore, Owens-Benniefield fails to allege she sent a qualified written request to Nationstar that would begin the 60-day period specified in § 2605(e)(3). Therefore, Owens-Benniefield has also failed to state a claim under § 2605(e).

Owens-Benniefield has not stated a plausible claim under any subsection of § 2605, so Count 6 for violation of RESPA is dismissed with prejudice.

### C.    Right to Financial Privacy

In the Court's previous Order, Count 7 for violation of two sections of the GLBA, 15 U.S.C. §§ 6801 and 6802, was dismissed with prejudice. (Doc. # 28 at 38). Although Owens-Benniefield acknowledges the claim was dismissed as to the GLBA, she nevertheless included the claim in the Second Amended Complaint. And the Court notes that the other sections Count 7 references, §§ 6821 and 6823, are also part of the GLBA and are enforceable only by administrative agencies. See 15 U.S.C. § 6822 (stating that "compliance with this subchapter shall be enforced" by the Federal Trade Commission or certain other federal agencies). Therefore, this claim is still dismissed with prejudice.

### D.    Fraud

The Court previously dismissed the Amended Complaint's fraud claim with leave to amend because "Owens-Benniefield fail[ed] to identify how she was misled by or relied upon Nationstar's allegedly fraudulent statements." (Doc. # 28 at 39). Under Florida law, "[a] fraud claim lies for: (1) misrepresentation of material fact; (2) by someone who knew

14

or should have known of the statement's falsity; (3) with intent that the representation would induce another to rely and act on it; and (4) injury suffered in justifiable reliance on the representation." Zarrella v. Pac. Life Ins. Co., 755 F. Supp. 2d 1218, 1224 (S.D. Fla. 2010). Additionally, Rule 9(b) of the Federal Rules of Civil Procedure places more stringent pleading requirements on cases alleging fraud. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1305 (11th Cir. 2002).

Owens-Benniefield has re-pled her fraud claim in Count 8. (Doc. # 29 at 21-26). Her allegations are substantively the same, although Owens-Benniefield now alleges she relied on Nationstar's reporting of the debt to the IRS and the credit reporting agencies. (Id. at 21-22). Regarding the IRS, Owens-Benniefield pleads she "relied on . . . IRS form 1098 [sent] to the IRS from [Nationstar] that now [Nationstar was] trying to enforce payment of $132,009.33. As [she] knows there is nothing she can do when items are submitted to the IRS." (Id. at ¶ 219). Owens-Benniefield also relied on the incorrect IRS form because "the IRS form was transmitted to the IRS under penalty of perjury, that it was to be taken as true, and therefore the outstanding debt that was reported should not have been reported." (Id. at ¶ 221).

But this new conclusory allegation is insufficient to state a fraud claim. Owens-Benniefield does not explain how she altered her behavior in reliance on the incorrect form provided to the IRS — she does not allege that she believed the form was correct or that she made further payments to Nationstar because of the form. Instead, she alleges she relied on Nationstar's sending the IRS form to inform her that Nationstar was "trying to enforce payment of $132,009.33." (Id. at ¶ 219). To the extent the statements about the IRS form can be read as allegations that Owens-Benniefield believed she owed the debt, they conflict with other assertions in this count that Owens-Benniefield knew Nationstar's reporting of the debt was false and fought to correct it.

Regarding the information provided to the credit reporting agencies, Owens-Benniefield alleges she "further relied on this misrepresentation of this amount [owed] . . . as [Nationstar] failed to correct its misleading collection account tradelines on [her] credit reports and passed this incorrect information on the credit reporting agencies along to unrelated third parties attorneys and other mortgage companies." (Id. at ¶ 224). While the other parties to whom Nationstar incorrectly reported the debt may have relied on

that misrepresentation, Owens-Benniefield has not alleged how she relied on and was deceived by Nationstar's conduct. Indeed, Owens-Benniefield maintains that she knew the debt was not valid and complained to the credit reporting agencies, Consumer Financial Protection Bureau, and Florida Attorney General's Office to force Nationstar to stop reporting the debt. (Id. at 21-24).

Again, in federal court, fraud claims must be pled with a higher degree of particularity than other types of claims. Thus, Rule 9(b) is satisfied only if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [the] same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). Owens-Benniefield has not plausibly pled with any particularity how *she* relied on and was deceived by Nationstar's statements, even though she alleges that others believed Nationstar's misrepresentations.

Because Owens-Benniefield has again failed to plead a plausible fraud claim, this claim is dismissed with prejudice.

### E.   **FDUPTA**

The Court dismissed the FDUPTA claim from the Amended Complaint with leave to amend because Owens-Benniefield did not "sufficiently allege[] Nationstar's calls and letter requesting payment were 'trade or commerce'" and she "fail[ed] to allege she incurred actual damages as a result of Nationstar's unfair acts." (Doc. # 28 at 44-45). Count 10 now alleges that Nationstar was not the mortgage servicer of Owens-Benniefield's former property, and that, as a result, Nationstar's actions after the deed-in-lieu was completed "constitute[] a [t]rade or [c]ommerce as it relates to the property and [Owens-Benniefield]." (Doc. # 28 at 29).

"To state a claim under FDUTPA, a plaintiff must allege (1) a deceptive or unfair practice in the course of trade or commerce, (2) causation, and (3) actual damages." Benjamin v. CitiMortgage, Inc., No. 12-62291-CIV, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013). "'Trade or commerce' means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." § 501.203(8).

"Several courts have held that debt collection activities are not 'trade or commerce' for FDUTPA purposes." Williams v. Nationwide Credit, Inc., 890 F. Supp. 2d 1319, 1321 (S.D. Fla. 2012). "In the rare instances where a court finds that a debt collection activity constitutes trade or commerce, the activity is actionable only to the extent that it is directed at the plaintiff." Miceli v. Dyck-O'Neal, Inc., No. 6:15-cv-1186-Orl-37KRS, 2016 WL 7666167, at *6 (M.D. Fla. Aug. 9, 2016). And, "[t]he 'trade and commerce' requirement is often not met in cases dealing with borrowers alleging FDUTPA violations against mortgage servicers." Bank of Am., N.A. v. Zaskey, No. 9:15-CV-81325, 2016 WL 2897410, at *10 (S.D. Fla. May 18, 2016)(quoting Benjamin, 2013 WL 1891284, at *4 (internal quotation marks omitted)).

Although Owens-Benniefield alleges Nationstar was not the current loan servicer for the property, she still alleges that Nationstar's conduct was committed in an attempt to collect a debt. She alleges Nationstar's conduct was "trade or commerce" because Nationstar "attempt[ed] . . . to collect an alleged obligation from [her]" and "attempt[ed] to collect an amount greater than what was owed." (Doc. # 29 at ¶ 306). But such attempts to collect a debt do not constitute "trade or commerce." See Acosta v. James A. Gustino, P.A., No. 6:11-

19

cv-1266-Orl-31, 2012 WL 4052245, at *1 (M.D. Fla. Sept. 13, 2012)("An attempt to collect a debt by exercising one's legal remedies does not constitute 'advertising, soliciting, providing, offering, or distributing' as those terms are used in Fla. Stat. § 501.203(8). Therefore, the Defendants were not engaged in 'trade or commerce' when they sent demand letters and otherwise engaged in their debt collection efforts, and the Plaintiff has failed to state a claim for violation of FDUTPA."). Therefore, Nationstar's attempts to collect payment from Owens-Benniefield cannot support a FDUPTA claim.

Even if Owens-Benniefield's other allegation — that Nationstar solicited her "to complete loan modification, deed in lieu, deed for lease and pre-foreclosure short sale" applications (Doc. # 29 at ¶ 284) — qualified as "trade or commerce," Owens-Benniefield has not plausibly alleged actual damages resulting from Nationstar's supposedly unfair or deceptive practices. Owens-Benniefield lists her damages as including "an unspecified actual damage for loss of credit opportunities, higher interest rate, health issues and related economic and non-economic injuries," as well as the costs she has incurred in pursuing this action. (Id. at 33).

But the economic damages alleged are either conclusorily pled or were not incurred directly as a result of Nationstar's misrepresentation that payment was owed on Owens-Benniefield's forgiven mortgage, as intended by FDUPTA's "actual damages" requirement. See Urling v. Helms Exterminators, Inc., 468 So. 2d 451, 454 (Fla. 1st DCA 1985)("The act is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer."). Thus, Owens-Benniefield has only alleged unspecified economic damages and consequential damages. See Nazario v. Prof'l Account Servs., Inc., No. 2:16-cv-772-FtM-99MRM, 2017 WL 1179917, at *5 (M.D. Fla. Mar. 30, 2017)("Proof of actual damages is necessary to sustain a FDUTPA claim. The statute does not allow the recovery of other damages, such as consequential damages." (citations omitted)). Therefore, Owens-Benniefield has failed to plead actual damages as required to state a claim under FDUPTA. The FDUPTA claim, Count 10, is dismissed with prejudice.

## F.   **Intentional Infliction of Emotional Distress**

Count 11 for intentional infliction of emotional distress was dismissed with prejudice by the Court's previous Order. (Doc. # 28 at 47-48). Although Owens-Benniefield

acknowledges this claim's dismissal, she nevertheless left it in her Second Amended Complaint. (Doc. # 29 at 35). For the sake of clarity, the Court reiterates that this claim is dismissed with prejudice.

G.   **Fla. Stat. § 501.1377**

Section 501.1377, Fla. Stat., prohibits a foreclosure-rescue consultant from "[e]ngag[ing] in or initiat[ing] foreclosure-related rescue services without first executing a written agreement with the homeowner for foreclosure-related rescue services" or from "[s]olicit[ing], charg[ing], receiv[ing], or attempt[ing] to collect or secure payment, directly or indirectly, for foreclosure-related rescue services before completing or performing all services contained in the agreement for foreclosure-related rescue services." Fla. Stat. § 501.1377(3).

Owens-Benniefield previously included a claim under this statute in the same count as her FDUPTA claim. The Court dismissed that claim with leave to amend because it failed to allege foreclosure proceedings, any foreclosure rescue transaction, and actual damages. (Doc. # 28 at 45-46). The Court also advised Owens-Benniefield that the claim would need to be pled as a separate count. (Id.).

Now, in Count 12, the Second Amended Complaint alleges Nationstar "solicited and made representation[s] to [Owens-Benniefield] to provide different services . . . for the valuable consideration, and foreclosure related rescue services." (Doc. # 29 at ¶ 331). Nationstar "provided [her] with multiple options based on [her] situation," including "loan modification, deed-in-lieu, deed for lease and pre-foreclosure short sale." (Id.).

But, while she alleges Nationstar offered her foreclosure-related rescue services, Owens-Benniefield only conclusorily alleges that Nationstar never executed a written agreement with her for such services and that it "solicited and attempt[ed] to collect a payment directly and indirectly for foreclosure related rescue services." (Id. at ¶ 335). The letter from Nationstar to which the Second Amended Complaint refers shows that Nationstar communicated with Owens-Benniefield about potential foreclosure-related rescue services, but does not show it requested any payment for those services. (Id. at ¶¶ 331, 336; Doc. # 17-1 at 68). Such an invitation to apply for foreclosure-related rescue services alone is not a violation of the statute.

And Owens-Benniefield's other allegations, regarding Nationstar's refusing to respect her deed-in-lieu with her

prior mortgage holder or servicer and Nationstar's attempts to collect payment on the underlying mortgage debt, do not fall within the scope of section 501.1377. Therefore, Owens-Benniefield has not plausibly alleged that Nationstar impermissibly sought payment for foreclosure-related rescue services or initiated such services before executing a written agreement with her.

Nationstar also argues this claim should be dismissed because Owens-Benniefield has failed to plausibly plead she suffered actual damages. (Doc. # 31 at 16-18). Claims under section 501.1377 are limited to actual damages, just like FDUPTA claims. See § 501.1377(7) ("Violators are subject to the penalties and remedies provided in part II of this chapter . . . ."). Owens-Benniefield alleges the same damages she alleged for her FDUPTA claim. (Doc. # 29 at 38). Just as those alleged damages were insufficient to support a FDUPTA claim, they are insufficient to support a claim for actual damages under section 501.1377. Count 12 for violation of section 501.1377, Fla. Stat., is dismissed with prejudice.

**IV.  Conclusion**

Count 2 for violation of the FCRA survives dismissal, but Counts 6, 7, 8, 10, 11, and 12 are dismissed with prejudice. Additionally, as determined in the Court's

previous Order, Counts 1, 3, 4, 5, and 9 of the Second Amended
Complaint survive.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant Nationstar Mortgage, LLC's Motion to Dismiss
Counts 2, 6, 7, 8, 10, 11, and 12 of the Second Amended
Complaint (Doc. # 31) is **GRANTED IN PART AND DENIED IN
PART**.

(2) The Motion is **DENIED** as to Count 2.

(3) Counts 6, 7, 8, 10, 11, and 12 are **DISMISSED WITH
PREJUDICE**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this
25th day of July, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE